## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| PAUL MCCAW, *for ANK*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-cv-4067 |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## <u>O R D E R</u>

Before the Court are the Motion for Summary Judgment filed by Plaintiff, Paul McCaw, on May 5, 2008 [Doc. 9] and the Motion for Summary Affirmance filed by Defendant, the Commissioner of Social Security, on July 18, 2009 [Doc. 11].  For the reasons that follow, the Motion for Summary Judgment is GRANTED IN PART and the Motion for Summary Affirmance is DENIED.

**PROCEDURAL BACKGROUND**

Plaintiff, Paul McCaw, initially filed for Supplemental Security Income benefits on January 21, 2003 on behalf of his niece, ANK, a minor and his ward, due to mental retardation, attention deficit disorder, and a learning disorder (Tr. 80-82). Plaintiff alleged an onset date of June 1, 2002.  His claim was initially denied and denied upon reconsideration (Tr. 22-23).  Plaintiff requested and was granted a hearing before Administrative Law Judge Peter J. Caras.  ALJ Caras issued an unfavorable decision on April 19, 2007 (Tr. 13-21) and the Appeals Council denied review (Tr. 5-7).  This lawsuit follows.

# BACKGROUND

## Hearing

ANK was born on May 31, 1991 and was 11 at the onset date and 15 at the time of the hearing. Mr. McCaw had been ANK's guardian for six years (Tr. 433). Mr. McCaw testified that ANK is not doing well in school and that she is in special education classes (Tr. 435). She has trouble staying on task, sometimes she does not complete tasks, she has poor short term memory, she has difficulty problem solving, she gets frustrated with constructive criticism, she has difficulty taking care of things, she sleeps in order to cope with stress, she does not like to go places by herself, she is not good with money, and she is fearful and nervous (Tr. 435-438). ANK testified that she is in the 10th grade and that she is in special education classes (Tr. 439-440). ANK has never been held back in school (Tr. 439). ANK was not receiving any additional tutoring at school (Tr. 440) although, she is in a self-contained special education class and, according to her attorney receives all the special services available (Tr. 447). Mr. McCaw testified that she has poor attendance at school but then indicated "she goes to school pretty regularly. She's had a few missed days, but yeah, she go to school regular" (Tr. 441). ANK got into a fight this school year – she "jumped in" a fight that her sister was in (Tr. 442). She also had some discipline with respect to her attendance (Tr. 442).

ANK was prescribed Adderall and had been taking it "for a while" (Tr. 440). She was not taking it at the time of the hearing because she had "a problem taking medicine because of something that happened with her mom some years ago" (Tr. 440). She was not receiving psychiatric care or counseling at the time of the

hearing (Tr. 441). ANK has no physical problems and does not see a doctor for any condition on a regular basis (Tr. 441).

ANK indicated that she is not in any clubs or organizations at school (Tr. 442-443). She went to Christian camp for a week the year before (Tr. 443). She has one friend, Mercedes, and other "associates" whom she does not consider friends (Tr. 444). She goes to the mall and "usually walk around and stuff" with Mercedes and she watches television (Tr. 445). She likes swimming and plays dodge ball in gym (although she doesn't like it) (Tr. 445). She takes care of her own hygiene and does chores such as the dishes and cleaning the bathroom (Tr. 445). With her uncle, she watches TV, goes to mall, goes out to eat and other things (Tr. 446).

Mr. McCaw believes ANK is disabled because she is "real hyper," can't follow the TV, and cannot do things without him (Tr. 446).

## Education

As indicated above, ANK is in special education classes (and given an individualized education program (IEP)) and consistently performs below grade level both in the classroom and on standardized tests.

When ANK was in the 4th Grade, her teacher noted that while she was above grade level in the category of reading (5.5 grade level), she was below grade level in math (2.9) and language (3.6) (Tr. 281).

When ANK was in the 5th Grade (age 10, 2002)), her teacher noted weakness in short and long term memory, difficulty switching from one math concept to another, and good spelling (Tr. 271). She also scored the equivalent to an 8 year old in a listening test, a 7 year old in a picture vocabulary test, a 9 year old in a one

3

word picture vocabulary test; but was age appropriate in voice and articulation (although she stutters) (Tr.270-271).

In the 6th Grade (2003), ANK had below average test scores on the Iowa Basic Skills Test (Tr. 255). She also was reading and performing math about two levels below her grade, 3.9 and 4.4 respectively (Tr. 219). ANK had "obvious" and "serious" problems in various aspects of acquiring and using information including: comprehension (verbal and written) and expression, learning new material, recalling old material, and problem solving (Tr. 220).[1] She, however, had no problems attending and completing tasks, interacting with others, moving about and manipulating objects, and caring for herself (Tr. 220-225). Her teacher credited her "significant improvement" to a stable home life and the involvement of her uncle (Tr. 226).

In the 7th Grade (2004), ANK generally performed at the 5th Grade level in reading, math, and written language. While no longer having any "serious problem" in aspects of acquiring and using information, ANK had "obvious problems" in comprehending and doing math problems, expressing ideas in writing, learning new material, and applying problem solving skill (Tr. 196). She also had

---

[1] This information is contained in a teacher questionnaire form that contains a check list in various areas or domains such as "acquiring and using information" and "attending and completing tasks," among other things. The check lists are to be filled out if a student has a problem functioning in each area. The check list contains specific areas of functioning. The teacher must indicate, for each area of functioning, whether the student has "no problem," "slight problem," "obvious problem," "serious problem," or "very serious problem." This form is much like a Residual Functional Capacity (RFC) assessment used in adult SSI cases. The domains or areas of functioning contained in the teachers' questionnaire is identical to those domains considered by the ALJ.

4

some "obvious problems" in the area of attending and completing tasks, including focusing long enough to finish a task, carrying out multi-step instructions, changing activities, and completing work accurately and without careless mistakes (Tr. 197). ANK had no other limitations in the other areas (interacting with others, moving about and manipulating objects, and caring for herself) (Tr. 198-200).

In the 8th Grade (2005), ANK 's science teacher noted only two areas of "obvious problem" in the area of acquiring and using information – in learning new material and recalling and applying previously learned material (Tr. 208). She had no problems in attending and completing tasks, and the other areas listed (Tr. 209-212).

In the 9th Grade (2006), ANK's IEP report indicated that she was average in general intelligence and cognitive processing, that she was age appropriate in communication, that her academic performance was average in art forms, English, math, state and local government, and life sciences, but that she was failing keyboarding and physical education. (Tr. 373). The report further noted that while she had adequate writing skill and is a fluent reader, her basic math skills are weak, she lacks focus in class, and lacks motivation for school work (Tr. 373-374). With respect to social functioning, the report noted that her attendance is a "major concern," that she needs to work on being less confrontational and argumentative, and that she has a lack of motivation (Tr. 375). The note indicated that if ANK "focused" she could perform academically and complete tasks (Tr. 375).

In the 10th Grade (late 2006), ANK was reading at the 5th grade level, she has an absenteeism problem, but that once she focuses, she can work individually (Tr. 340).

**Medical**

In a May 5, 2005 Psychiatric evaluation (Age 13), Dr. Bernard J. Biermann concluded that ANK had Attention Deficit/Hyperactivity disorder (ADHD), inattentive type, a rule out borderline intellectual functioning, no medical problems, social stressors and school problems, and a Global Assessment of Functioning (GAF) score of 60 (Tr. 390).[2] Mr. McCaw indicated to Dr. Biermann that ANK has problems with focus and attention, that she has problems with understanding, has problems following through with tasks, and is disorganized and forgetful (Tr. 389). ANK indicated that her mood was good, she denied persistent sadness and indicated that she sleeps "okay," has a fine appetite, no history of mania or anxiety disorder (Tr. 389). Dr. Biermann noted that she appeared healthy with good grooming, was pleasant and cooperative, had good eye contact, normal speech, organized thoughts, was goal directed and that there was no evidence of psychosis (Tr. 390). He further noted that while her affect was "a little bit restricted," she smiled appropriately (Tr. 390). He prescribed Adderall for the ADHD.

Subsequent to Dr. Biermann, ANK followed up with Dr. Ernest L. Galbreath for medication management on September 18, 2005 and November 9, 2005. Dr. Galbreath repeated Dr. Biermann's diagnosis (Tr. 387-388). On September 19,

---

[2] This GAF score correlates to "moderate symptoms" related to a patients overall level of functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).

6

2005, Dr. Galbreath noted that ANK was alert and oriented, pleasant, and focused (Tr. 388). However, she was not staying on task "too well" and her eating and sleeping was described as fair (Tr. 388). In November, however, she was alert and oriented, pleasant, in no acute distress, and was sleeping fairly well (Tr. 387). However, the Adderall was affecting her appetite and she was switched to Concerta (Tr. 37). There is no indication in the record that she continued with any psychiatric care.

**Intelligence Testing and Examinations**

ANK underwent two Wechsler Intelligence Scale tests, one for children on April 1, 2004 (WISC-IV) and one for adults on March 9, 2007 (WAIS-III).

The first test (WISC-IV) was performed at the agency's request by Stephen Singley, a licensed clinical psychologist (Tr. 349), when ANK was almost 13. Mr. Singley reported a full scale IQ of 85.[3] In interpreting the results, Mr. Singley noted that her scores were in the "very low average to borderline deficient range" and that while her scores indicates a learning disability, they are not consistent with mental retardation (Tr. 351). Mr. Singley noted that while there is a 90% confidence rate in the full scale IQ score, if the processing speed score were eliminated, her full scale IQ score would be "several points lower than what is reported" (Tr. 351). Finally Mr. Singley, based on Mr. McCaw's observations, ANK's affectless manner, and her indication that she had few friends and interests, concluded that ANK may have some depression (Tr. 352).

---

[3] In the individual components of the IQ test, ANK scored 81 in Verbal Comprehension (10th percentile), 73 in Perceptual Reasoning (4th percentile), 80 in Working Memory (9th percentile), and 128 in Processing speed (97th percentile). Her overall score, 85, placed her in the 16th percentile (Tr. 350)

7

ANK underwent a second IQ test (WAIS-III) on March 2, 2007, at the age of 15 (3 months shy of her 16th birthday), which was conducted by Dr. Jo Ann Milani, a licensed psychologist. Dr. Milani observed that ANK looked bored, appeared depressed, was angry at completing the task, sleeps often, had slurred and muttered speech (which Mr. Singley also observed), and had a poor memory (Tr. 405-406). Dr. Milani noted that she met all the criteria for ADHD (Tr. 406). Dr. Milani noted a full scale IQ score of 69 (which placed her in the extremely low to borderline range of intellectual functioning) (Tr. 407). Dr. Milani noted that the Weshler Individual Achievement Test-II indicated that ANK was reading at the 5th grade level, but thatthe scores "suggest an extremely handicapped individual" (Tr. 407).

Dr. Milani concluded that her test scores placed her in the "mild range of mental retardation," that she is a better rote learner than a conceptual learner, she has temper problems, has ADHD, has poor reasoning and judgment, and that her "explosive disorders" and "sleeping all day" require immediate attention (Tr. 407-408). Dr. Milani assigned a GAF of 55 (Tr. 408).

### ALJ's Decision

ALJ Caras found that ANK was not substantially gainfully employed, that she had a severe impairment, that her impairments, a learning disorder and attention deficit disorder, did not meet or equal the listings, and that she did not have any extreme limitations in functioning or a sufficient number of marked limitations in functioning (Tr. 21). Specifically, ALJ Caras found that ANK did not

meet the listing requirement of 112.05c[4] of the Listing of Impairments despite Dr. Milani's assessment because that assessment was not consistent with Mr. Singley's report, and she has not been diagnosed as mentally retarded or with borderline intellectual functioning, nor has she been diagnosed with depression (Tr. 16-17). Further, the ALJ found that in the six domain of functioning (which are identical to those domains of functioning filled out by her teachers), ANK had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting with others; and she has no limitations in moving about and manipulating objects, caring for herself, and health and physical well-being (Tr. 17-20).

## DISCUSSION

### Standard

In determining whether a child is disabled for the requisite 12 month period, the agency goes through a three step inquiry. First, it determines whether the child is doing substantial gainful activity. 20 C.F.R. § 416.924(a). If she is engaged in such activity, she is found not disabled. If not, the agency next determines whether her impairments or combinations of impairments are severe. Id. If they are not severe, she is found not disabled. If they are severe, they agency determines whether they meet, medical equal, or functionally equal the Listings of Impairments. Id. If the claimant's condition does not meet or medically equal a Listing, the agency determines whether the condition functionally meets a Listing.

---

[4] This portion of the Listings, 20 C.F.R. § 404, subpt P, App. 1, relates to mental disorders. Section 112.05c is the portion that identifies the requirements for mental retardation.

9

20 C.F.R. § 416.926a. In making this determination, the agency considers six domains of functioning: acquiring and using information, attending and completing task, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. Id. at § 416.926a(b)(1)(i-iv). A claimant must have an extreme limitation in one domain or a marked limitation in two or more domains to be considered disabled. Id. at § 416.926a(a).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. 405(g) which provides that "[t]he finding of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Maggard, 167 F.3d at 379 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1970)).

A court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. See Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989). A court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). Furthermore, in determining whether the ALJ's findings are supported by substantial evidence, credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. See Imani v. Heckler, 797 F.2d 508, 510 (7th Cir.), cert. denied, 479 U.S. 988 (1986).

However, the ALJ must articulate reasons for rejecting or accepting entire lines of evidence. Godbey v. Apfel, 238 F.3d 803, 808 (7th Cir. 2000) (ALJ's failure to

adequately address evidence that was contrary to his decision merited reversal); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994) (ALJ erred by failing to discuss evidence regarding claimant's hand dexterity problems). The ALJ is required to "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985)).

## Analysis

Plaintiff first argues that the ALJ failed to make a credibility assessment of Mr. McCaw. Social Security Regulation 96-7p generally described how a claimant's credibility is to be assessed and generally provides that the ALJ must make a credibility determination and must indicate "specific findings" on credibility that would make it clear what weight was given to the statements of the claimant. With respect to a child, the regulations states that if the child is "unable to adequately describe his or her symptoms," the ALJ must accept a statement of symptoms from the person most familiar with her. Id. at fn 2. In light of the regulation, the ALJ must initially determine credibility, must indicate what weight is given to the claimants statements, and must support this determination with evidence in the record. Brindisi v. Barnhart, 315 F.3d 783, 787-788 (7th Cir. 2003). Defendant acknowledges that the ALJ did not make a separate credibility determination but argues that the "decision makes clear how he weighed the evidence." With respect to ANK's credibility, ALJ Carras indicated that she is found credible only to the extent that her testimony and reports are consistent with the medical record.

11

The ALJ did not indicate that he found ANK's description of her symptoms sufficiently inadequate such that he necessarily relied on Mr. McCaw's statement of her condition, as provided by SSR 96-7p. The Court would have to assume that he found her statement adequate. As such, his cursory, single sentence, evaluation of ANK's statements are clearly insufficient. Brindisi, 315 F.3d at 787-789.

The ALJ also, however, outlined some of Mr. McCaw's testimony and reports to medical providers and described how some of Mr. McCaw's representations of ANK's behavior are inconsistent with reports from teachers and Mr. Singley. This might lead the Court to conclude that the ALJ found ANK's testimony inadequate and that he was making a credibility assessment of Mr. McCaw's statements. However, there is no discussion of how Mr. McCaw's descriptions are consistent with reports from Mr. Singley and ANK's teachers. For example, Mr. Singley indicated that ANK appeared depressed – this would appear consistent with Mr. McCaw's assertion that she spends most of her time at home sleeping. Mr. McCaw also noted that ANK had difficulty staying on task; this is consistent with her evaluation in the 7th grade that she had trouble staying on task and in the 9th grade that she lacked focus. As Defendant acknowledges, there is no separate evaluation of Mr. McCaw's credibility and Defendant cannot now cobble together rationale that should be contained in the ALJ's findings.

Plaintiff also argues that the ALJ erred in failing to give weight to the IQ test performed in 2007 (when ANK was almost 16) in favor of the test performed in 2004 (when ANK was almost 13). If, as Plaintiff contends, Dr. Milani's test results are credited, ANK would be considered mentally retarded and would meet the

requirements of Listing 112.05(D). The Listing provides that a child has the requisite level of severity to meet the requirements for mental retardation if she has:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.
>
> 20 C.F.R. § 404, subpt P, App. 1, § 112.05D.

In evaluating competing IQ tests, the regulations state that:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above . . . .
>
> 20 C.F.R. § 404, subpt. P, App. 1 § 112.00(D)(10).

In 2004, Plaintiff had a full scale IQ score of 85 and in 2007, Plaintiff had a full scale IQ score of 69. Thus, if the 2007 scores are used, Plaintiff would meet the Listing requirements if she can also show another physical or mental impairment that imposes addition and significant functional limitations.

Plaintiff is correct in noting that the 2004 results would not be considered "current" as they were taken more than 2 years prior to ALJ Carras' decision. The 2007 rest results would appear to be more "valid" because they were taken closer to the time when Plaintiff would have turned 16, but only if they are consistent with current behavior.

13

ALJ Carras rejected Dr. Milani's test scores because ANK could have performed poorly because of a "variety of factors" and because she had never been diagnosed by anyone (except Dr. Milani) as being mentally retarded.  First, it is speculation that ANK tested poorly especially in light of Dr. Milani's conclusion that "these scores are considered an accurate measure of his [sic] present intellectual functioning" (Tr. 406).  See e.g. Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) ("An ALJ's conjecture is never a permitted basis for ignoring a treating physician's views.").  With respect to the diagnosis of mental retardation, the ALJ was correct in noting that no other source indicated such severe limitations.  However, the regulations do not specify that there should be a medical diagnosis of mental retardation in order for Plaintiff to meet the Listings (or at least no party has pointed out such a regulation).  The regulations do indicate that a test score more than two years old is generally not valid and that a more recent test can be accurate if consistent with current behavior.  There is no discussion in the ALJ's finding that would indicate to the Court that Mr. Singley's report is more accurate despite its age or whether Dr. Milani's report is consistent with "current" behavior.  It is clear, however, that the ALJ found that Dr. Milani's "extreme" findings appeared to be inconsistent with school records and Dr. Biermann's findings.[5]  However, there is no analysis of whether the test results themselves are not credible.  While the Court makes no conclusion of whether Dr. Milani's report is valid and should be

---

[5] As ALJ Crras noted, a number of Dr. Milani's findings are inconsistent with the evaluations of ANK's behavior by her teachers and the diagnosis provide by Dr. Biermann.

disfavored vis-à-vis Mr. Singley's it is up to the agency, in the first place, to make such a determination and to explain that determination.

Plaintiff finally argues that the ALJ ignored evidence or failed to properly analyze the evidence especially with regard to ANK's sleeping habits, her academic ability, memory problems, concentration, and behavior problems. As Defendant notes, the ALJ is not required to address every piece of evidence in the record. <u>Diaz v. Chater</u>, 55 F.3d 300, 307-308 (7th Cir. 1995). Plaintiff's arguments are merely a recast of his argument that the ALJ failed to assess Mr. McCaw's credibility and failed to accept the entirety of Dr. Milani's report. As this matter is being remanded to consider Mr. McCaw's credibility as provided by SSR 96-7p and Dr. Milani's report as provided by the regulations, most of Plaintiff's remaining argument is rendered moot.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Plaintiff on May 5, 2008 [Doc. 9] is GRANTED IN PART and the Motion for Summary Affirmance filed by Defendant on July 18, 2009 [Doc. 11] is DENIED.

This matter is REMANDED to the Commissioner of Social Security pursuant to Sentence 4 of 42 U.S.C. § 405(g). Upon receipt of the Order, the Commissioner shall issue a new decision that makes a full determination of ANK's and/or Mr. McCaw's credibility consistent with SSR 96-7p and that would indicate the grounds for rejecting Dr. Milani's IQ assessment and scores in light of the directions provided in the Listings. Specifically, the Commissioner should indicate why a

more recent IQ test taken closer to when claimant would be 16 is rejected in favor of an older test that the Listings indicate would not be valid.

CASE TERMINATED

Entered this <u>27th</u> day of March, 2009

                                                                      s/ Joe B. McDade
                                                                   JOE BILLY MCDADE
                                                      United States District Judge